UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JEANNIE L. HAYNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:19-CV-146-SPM |
| | ) |
| | ) |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Jeannie L. Haynes ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). Because I cannot determine whether substantial evidence supports the decision denying benefits, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

**I.   STANDARD FOR JUDICIAL REVIEW**

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir.

1

2008)); *see also* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2016, Plaintiff applied for DIB. (Tr. 222-28). In her application paperwork, she alleged disability with an onset date of July 22, 2015, based on prior torn rotator cuff surgeries, limited range of motion in both shoulders, neuropathy in both hands/arms, bilateral

2

carpal tunnel, dropping objects/grip issues, bipolar depression with manic tendencies and episodes, PTSD with nightmares and night terrors, degenerative disc disease, chronic back pain; fibromyalgia; focusing and concentration issues; narcolepsy; restless leg syndrome; anxiety; heart murmur; chronic acute bronchitis; and asthma. (Tr. 144, 222, 260, 266). Her application was initially denied (Tr. 141), and she filed a request for a hearing before an ALJ (Tr. 151-52). On May 31, 2018, the ALJ held a hearing. (Tr. 27-61). On October 30, 2018, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 8-26). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, and on June 24, 2019, the Appeals Council declined to review the case. (Tr. 1-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

At the hearing before the ALJ, Plaintiff testified that she was unable to work because of back pain that has gotten significantly worse and because 90% of the time she is lying down rather than sitting or standing. (Tr. 38). The back pain goes from her neck to her tailbone. (Tr. 43). She also has numbness in her legs after she sits or stands for too long. (Tr. 42). Her back pain causes her problems when standing, such that she would have to take several breaks if she were standing for half an hour. (Tr. 53). She also has carpal tunnel syndrome that makes it hard for her to hold objects without dropping them. (Tr. 43, 49-50). She has also had both shoulders operated on, and since the surgeries she can lift up to fifteen pounds. (Tr. 43, 48). She can walk about a sixteenth of a mile. (Tr. 48). She also testified that gets anxious and irritable when around a lot of people; she sees a therapist and a psychiatrist and takes medications for her mental impairments. (Tr. 38-41).

With respect to the medical records, the Court accepts the facts as presented in the parties' respective statements of fact. The Court will cite to specific portions of the record as needed to address the parties' arguments.

### III.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611.

4

To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 1520(a)(4), which "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

5

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

**IV.** **THE ALJ'S DECISION**

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Act through December 31, 2018; that Plaintiff has not engaged in substantial gainful activity since July 22, 2015, the alleged onset date; that Plaintiff has the severe impairments of spinal degenerative disc disease, bilateral shoulder degenerative joint disease, post-traumatic stress disorder (PTSD), mood disorder, anxiety disorder, and substance abuse disorder; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 13-14). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [she can] occasional[ly] balance, kneel, crouch, crawl, stoop and climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She is capable of simple, routine tasks with only occasional decision making or changes in the work setting and no interaction with the public and only brief and superficial interaction with co-workers.

(Tr. 16). At Step Four, the ALJ found Plaintiff was unable to perform any of her past relevant work as a home health aide and short order cook. (Tr. 20). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including representative occupations such as cleaner and polisher, marker, and screwdriver operator. (Tr. 20-21). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from July 22, 2015, through the date of his decision. (Tr. 21).

6

V.  **DISCUSSION**

Plaintiff argues that the ALJ's decision should be reversed because the ALJ failed to properly evaluate Plaintiffs' fibromyalgia. More specifically, Plaintiff argues that the ALJ should have found Plaintiff's fibromyalgia to be a severe impairment at Step Two of the analysis; that the ALJ should have included limitations related to Plaintiff's fibromyalgia in the RFC; and that the ALJ's failure to evaluate Plaintiff's fibromyalgia affected the ALJ's evaluation of the opinion of Plaintiff's treating physician, Richard Hester, M.D.

The Court's review of the record shows that Plaintiff was repeatedly diagnosed with fibromyalgia or "primary fibromyalgia syndrome" by multiple treatment providers, including her primary care physician (Dr. Hester); that she frequently complained of pain and other symptoms related to fibromyalgia; and that she was regularly treated for fibromyalgia with medications, including Lyrica and Cymbalta. (Tr. 361-62, 364-65, 367-68, 374-76, 411-13, 457-58, 462, 471-72, 476, 480-81, 483-85, 561-63, 571-72, 575-76, 629-30). In addition, fibromyalgia was one of the diagnoses Dr. Hester listed on his medical source opinion as providing a basis for his opinions. (Tr. 401). In addition, contrary to Defendant's argument that Plaintiff did not allege fibromyalgia as a basis for disability in her application for benefits, a full review of Plaintiff's application shows that she *did* allege fibromyalgia as a basis for disability in her disability paperwork. (Tr. 266). Indeed, the Social Security Administration recognized that she had done so: in the letter denying her claim, the Social Security Administration stated, "You said you were unable to work because of: 11/12/13 surgery for torn rotator cuff, 8/17/16 surgery for torn rotator cuff, limited range of motion w/ both shoulders, neuropathy in both hands/arms, bilateral carpal tunnel, drops objects, grip issues, bipolar depression w/ manic tendencies and episodes, PTSD w/ nightmares and night terrors, degenerative disc disease, chronic back pain, **fibromyalgia,** focusing and concentration

7

issues, narcolepsy w/ cataplexy, RLS, anxiety, heart murmur w/ pulsations, chronic acute bronchitis and asthma." (Tr. 144) (emphasis added). In addition, fibromyalgia is listed as Plaintiff's secondary diagnosis in the "Disability Determination and Transmittal Document" stating that Plaintiff's claim was denied. (Tr. 141).

Despite all of the above, the ALJ's decision contains no mention of fibromyalgia—the ALJ does not address whether Plaintiff's fibromyalgia is a severe impairment, does not discuss Plaintiff's fibromyalgia his review of Plaintiff's medical records, and does not discuss Plaintiff's fibromyalgia  when evaluating the consistency of Dr. Hester's opinions with the rest of the records. For the reasons discussed below, the ALJ's failure to evaluate or even discuss Plaintiff's fibromyalgia requires remand.

As discussed above, at Step Two, the Commissioner must determine whether the claimant has a "severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement . . . ." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). To be a "severe impairment," an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard," and the Eighth Circuit has "upheld on numerous occasions the Commissioner' finding that a claimant failed to make this showing." *Kirby*, 500 F.3d at 707 (internal citation omitted). Additionally, in assessing RFC, the regulations direct to ALJ to "consider all of [the claimant's]

medically determinable impairments of which we are aware, including [those] medically determinable impairments that are not 'severe' . . . ." 20 C.F.R. § 404.1545(a)(2).

For cases involving fibromyalgia, Social Security Ruling ("SSR") 12-2p provides guidance on how to "develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia" and how to "evaluate fibromyalgia in disability claims." *See* SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012). SSR 12-2p explains that fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Id.* at *2. SSR 12-2p further explains that to establish a medically determinable impairment of fibromyalgia, a claimant must have a physician's diagnosis of fibromyalgia and evidence to satisfy one of two sets of criteria, which are generally based on criteria from the American College of Rheumatology ("ACR"). *Id.* The "1990 ACR Criteria" require (1) a history of widespread pain, (2) at least eleven positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id.* at *2-*3. The "2010 ACR Preliminary Diagnostic Criteria" require (1) a history of widespread pain, (2) reported manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id* at *3. SSR 12-2p further states that if there is insufficient evidence to determine whether a person has the medically determinable impairment of fibromyalgia, the Commissioner may recontact the person's treating source, request additional existing records, or request additional information from the claimant or others. *Id.* at *4.

As Plaintiff points out, the record contains evidence that arguably supports a finding that her fibromyalgia was a medically determinable impairment (or at least warranted recontacting her treating physician or others for additional information) under either set of criteria. As discussed

above, Plaintiff was diagnosed by her physician on numerous occasions with fibromyalgia. Addressing the first prong of each set of criteria, Plaintiff points to evidence throughout the record that Plaintiff reported pain in her neck, back, shoulders, and legs. (Tr. 358, 361-62, 367, 374, 378). Addressing the third prong of both sets of criteria, Plaintiff points to evidence of various other laboratory and imaging tests Plaintiff underwent, many of which were performed before Dr. Hester diagnosed (or maintained his diagnosis) of fibromyalgia, suggesting that other potential sources of her pain were ruled out. These include complete blood counts (Tr. 384, 387, 589, 591, 632); sedimentation rate tests (Tr. 386, 392); thyroid function tests (Tr. 385, 388), ANA testing for autoimmune diseases (Tr. 438), and X-rays of the cervical spine, shoulders, and lumbar spine (Tr. 396-99, 526-27). Addressing the second prong of the 1990 ACR Criteria, Plaintiff points to evidence that Dr. Hester identified "Multiple tender spots positive for fibromyalgia." (Tr. 375). Addressing the second prong of the 2010 ACR Preliminary Diagnostic Criteria, Plaintiff points to records showing Plaintiff's fatigue (Tr. 427-28, 457, 462), depression (Tr. 528, 536), anxiety (Tr. 528, 530, 536,), insomnia (Tr. 358, 362, 380, 462, 498), nausea (Tr. 367, 371, 373), restless leg syndrome (Tr. 359, 457, 462, 476, 481, 498, 562, 571-72, 576), and headaches or migraines (Tr. 358, 363, 457, 462, 467, 476, 481, 498, 536, 562, 571, 576).

In his analysis at Step Two, the ALJ listed the impairments he considered to be severe, and he explained why he found Plaintiff's carpal tunnel syndrome was not a severe impairment; however, he did not mention fibromyalgia at all. (Tr. 14). In his brief, Defendant does not challenge Plaintiff's assertion that there was evidence in the record that might support a finding that fibromyalgia was a severe impairment. Instead, Defendant argues that there is no reversible error because the ALJ found other severe impairments, engaged in the rest of the five-step process, and came to an RFC finding that was supported by substantial evidence. Defendant emphasizes that

evidence of Plaintiff's extensive daily activities supports the RFC finding that Plaintiff could perform light work, as do several normal or near-normal examination findings in the record. Defendant also argues that the ALJ properly discounted Dr. Hester's opinion as inconsistent with the record as a whole.

The Court acknowledges that in some cases, courts have held that an error at Step Two was harmless where the ALJ found some impairments to be severe, proceeded with the five-step analysis, and considered all of a claimant's impairments (both severe and non-severe) at the later steps of the process. *See, e.g.*, *Spainhour v. Astrue*, No. 11-1056-SSA-CV-W-MJW, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC."). *See also* 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). Here, however, the Court cannot say that the ALJ's error in failing to evaluate Plaintiff's fibromyalgia at Step Two was harmless. This is not a situation where the ALJ failed to list an impairment as severe but nevertheless considered the impairment and its effects later in his analysis. Here, the ALJ did not discuss Plaintiff's fibromyalgia or its effects at any step of the decision.

Courts have often found that an ALJ's failure to properly analyze whether fibromyalgia is a severe impairment may require remand, particularly where that failure may have affected later steps of the five-step analysis. *See Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005) (remanding where the ALJ misunderstood fibromyalgia and did not find it to be a severe

11

impairment; noting that it "appears the ALJ's misunderstanding of fibromyalgia affected the ALJ's RFC findings, and her related hypothetical to the VE" ); *Berry v. Colvin*, No. 5:16-CV-01500, 2016 WL 7741739, at *11-*12 (S.D. W. Va. Dec. 22, 2016), *report and recommendation adopted*, No. 5:16-CV-01500, 2017 WL 127463 (S.D. W.Va. Jan. 12, 2017) (remanding where, despite "numerous references to pain and tenderness related to fibromyalgia" in the medical records, "the ALJ did not address Claimant's medically determinable impairment of fibromyalgia, did not assess the severity of the condition, and did not discuss the functional impact of Claimant's fibromyalgia"; noting that "the ALJ's failure to expressly address and rate the severity of Claimant's fibromyalgia cannot possibly be viewed as harmless given that the Court is unable to determine whether the ALJ properly considered the functional impact of Claimant's fibromyalgia at the subsequent steps of the sequential evaluation"); *Olmstead v. Saul*, No. 18-CV-985-MJR, 2020 WL 1284014, at *3-*4 (W.D.N.Y. Mar. 18, 2020) (remanding where the ALJ did not evaluate whether the plaintiff's fibromyalgia was a medically determinable impairment under the 2010 ACR Preliminary Diagnostic Criteria, despite the fact that there was evidence in the record that "could very well support a finding that the plaintiff's fibromyalgia constitutes a medically determinable impairment" under those criteria).

The Court also notes that the ALJ's failure to determine whether Plaintiff's fibromyalgia was a medically determinable impairment may also have affected the ALJ's evaluation of Dr. Hester's treating physician opinion.[1] On October 6, 2016, Dr. Hester completed a Medical Source

---

[1] Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2). Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the

Statement—Physical for Plaintiff, in which he opined, *inter alia,* that due to Plaintiff's fibromyalgia and other impairments, she could sit for only 30 minutes at a time and for less than two hours in an eight-hour workday; she could stand for less than two hours in an eight-hour workday; she would need to shift positions at will, she would need frequent unscheduled breaks; she would be off-task 25% of the work day; and she would be absent from work more than 4 days per month. (Tr. 401-03). The ALJ gave "no weight" to Dr. Hester's opinion, finding it "completely inconsistent" with her conservative treatment regimen and with normal objective findings in the record. (Tr. 19). However, the ALJ's failure to consider fibromyalgia as a possible cause of these symptoms may have affected the ALJ's view of what objective findings would be expected for Plaintiff's condition and what treatment would be appropriate for that condition. This may have affected the ALJ's evaluation of Dr. Hester's opinion. *See Brosnahan v. Barnhart,* 336 F.3d 671, 677 (8th Cir. 2003) (ALJ improperly discounted complaints related to fibromyalgia based on the fact that treaters did not recommend surgery when "the ACR does not recommend surgery for fibromyalgia"); *Weiter v. Astrue,* No. 4:09CV00702 FRB, 2010 WL 2802147, at *20 (E.D. Mo. July 15, 2010) (ALJ improperly discounted complaints related to fibromyalgia based on a conservative course of treatment where there was "no medical evidence suggesting that plaintiff has not been pursuing a valid course of treatment" for fibromyalgia); *Morgan v. Comm'r of Soc. Sec.*, No. 8:14-CV-305-T-DNF, 2015 WL 1311062, at *7 (M.D. Fla. Mar. 24, 2015) (remanding for further evaluation of the opinion of a doctor who diagnosed the plaintiff with fibromyalgia;

---

frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6).

These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c(a). The Court refers to the version of the regulations that applies to claims filed before March 27, 2017.

stating, "When viewing Dr. Clay's opinion and limitations in light of SSR 12-2p, Dr. Clay's limitations appear to be supported by his medical records because fibromyalgia is mainly based upon subjective complaints. The Court is unable to determine whether the ultimate decision on the merits of the claim by the ALJ is rational and supported by substantial evidence when he failed to consider SSR 12–2p which sets forth the criteria to evaluate a claim involving fibromyalgia.").

In sum, had the ALJ properly evaluated the evidence of all of Plaintiff's impairments, including fibromyalgia, he might have given Dr. Hester's opinion more weight and might have made a more limited RFC finding. The ALJ's failure to address Plaintiff's fibromyalgia and related symptoms leaves the Court unable to determine whether substantial evidence supports the ALJ's decision. It is possible that the ALJ weighed the evidence in the record and reasonably determined that Plaintiff's fibromyalgia was not a medically determinable impairment or that it did not impose any limitations more severe than those reflected in the RFC. However, it is also possible that the ALJ simply overlooked or misunderstood Plaintiff's fibromyalgia diagnoses. Under these circumstances, as in the cases cited above, remand is required. On remand, the ALJ should evaluate Plaintiff's fibromyalgia in accordance with SSR 12-2p and should consider Dr. Hester's opinion in light of all of the evidence in the record, including the evidence related to Plaintiff's fibromyalgia.

## VI. CONCLUSION

For the reasons set forth above, the Court cannot determine whether the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under

Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

                                                          /s/ Shirley Padmore Mensah
                                                          SHIRLEY PADMORE MENSAH
                                                          UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of September, 2020.